■ Marc Beck, Appellant, v Northside Medical et al., Defendants, and Wyckoff Heights Medical Center, Respondent. [810 NYS2d 202]—

In an action to recover damages for medical malpractice, the plaintiff appeals from an order of the Supreme Court, Kings

County (Steinhardt, J.), dated July 20, 2004, which, in effect, granted that branch of the motion of the defendant Wyckoff Heights Medical Center pursuant to CPLR 4404 which was to set aside a jury verdict in favor of the plaintiff and against it and direct that judgment be entered in favor of Wyckoff Heights Medical Center.

Ordered that the order is reversed, on the law, with costs, that branch of the motion pursuant to CPLR 4404 which was to set aside the jury verdict in favor of the plaintiff and against the respondent, and direct that judgment be entered in favor of the respondent is denied, and the matter is remitted to the Supreme Court, Kings County, to determine the remaining branches of the respondent's motion and for further proceedings in accordance with the determination of those branches of the motion.

The plaintiff, who injured his right hand, was seen by his private physician, who prescribed a course of antibiotics to be taken orally. When the plaintiff's condition, diagnosed as cellulitis, did not improve, the plaintiff was referred to the defendant Wyckoff Heights Medical Center (hereinafter Wyckoff) for further evaluation and treatment. The plaintiff was given a note which stated that he had severe cellulitis and had not responded to oral antibiotics. The emergency room physician, Dr. Glen Asaeda, examined the plaintiff on October 16, 1999, and initially decided to admit him due to "failed outpatient management." Believing he needed further authorization, Dr. Asaeda requested a consult from Dr. Andrei Kranz, who was on duty at Wyckoff in the "surgical subspecialty service." After conferring with Dr. Kranz, who advised that an admission was not necessary and that the plaintiff should continue with the oral antibiotics, Dr. Asaeda discharged the plaintiff from the hospital. The plaintiff was admitted to the hospital four days later, but by then his condition, initially only a superficial infection, had developed into a deeper infection. Surgery was required to remove the dead tissue in the plaintiff's finger, followed by reconstructive surgery because new tissue failed to regenerate. The plaintiff's theory at trial was that the delay in treatment caused him to suffer severe and permanent injuries to his finger.

At issue on this appeal is Dr. Kranz's role in the decision to discharge the plaintiff from the hospital on October 16, 1999. Called to testify at trial, Dr. Kranz denied that he examined the plaintiff and denied that he rendered a consult. The plaintiff did not call Dr. Asaeda to testify, and at the close of the plaintiff's case, Wyckoff, Dr. Kranz's employer, moved for judgment as a matter of law on the ground that the plaintiff's medical expert's

opinion lacked adequate foundation because there had been no evidentiary showing that Dr. Kranz had ever been apprised of the relevant facts concerning the plaintiff's deteriorating condition. The motion was denied. However, Dr. Asaeda testified as part of Wyckoff's case. The jury returned a verdict in favor of the plaintiff, finding that both Dr. Asaeda and Dr. Kranz had departed from good and accepted medical practice. The Supreme Court thereafter granted that branch of Wyckoff's motion which was pursuant to CPLR 4404 to set aside the jury verdict in favor of the plaintiff and against it and, in effect, directed that judgment be entered in favor of Wyckoff, determining that there was insufficient evidence to support the plaintiff's expert's opinion as to Dr. Kranz based on the evidence at the close of the plaintiff's case.

The Supreme Court erred in setting aside the verdict. It should have considered all the evidence adduced at trial, including the evidence introduced on Wyckoff's case (*see Bopp v New York Elec. Veh. Transp. Co.*, 177 NY 33, 35 [1903]; *Gibson, Dunn & Crutcher v Global Nuclear Servs. & Supply*, 280 AD2d 360, 362 [2001]; *Keeton v Cardinal O'Hara High School*, 233 AD2d 839 [1996]; *National Bank of N. Am. v Systems Home Improvement*, 69 AD2d 557, 562 [1979], *affd* 50 NY2d 814 [1980]; *Calandra v Martino*, 2002 NY Slip Op 40050 [U] [App Term, 2d Dept 2002]). Wyckoff, by calling Dr. Asaeda, cured any defect which may have existed in the plaintiff's case (*see Bopp v New York Elec. Veh. Transp. Co., supra*; *Gibson, Dunn & Crutcher v Global Nuclear Servs. & Supply, supra*; *Calandra v Martino, supra*). Dr. Asaeda's testimony not only established that Dr. Kranz had been fully apprised of the plaintiff's deteriorating medical condition and that he had not responded to oral antibiotics, but that Dr. Kranz himself had examined the plaintiff. Thus, there was adequate foundation for the plaintiff's expert's opinion that Dr. Kranz, in failing to recognize the severity of the plaintiff's condition and in advising not to admit the plaintiff to Wyckoff, deviated from accepted standards of medical care.

In view of the above determination, we do not reach the plaintiff's remaining contention. Schmidt, J.P., Cozier, Krausman and Luciano, JJ., concur.